UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BARRY WHITTAKER,

        Petitioner,                      CIVIL ACTION NO. 06-15679

        v.                                DISTRICT JUDGE ANNA DIGGS TAYLOR

BLAINE LAFLER,                      MAGISTRATE JUDGE VIRGINIA M. MORGAN

        Respondent.

_____/

## REPORT AND RECOMMENDATION

        Petitioner Barry Whittaker is a prisoner in state custody following his conviction in Oakland County, Michigan, for felonious assault MCL 750.82 and Domestic Violence MCL 750.81(2). The court, Hon. Denise Langford Morris, ordered him to serve four to 15 years, the sentence being enhanced by his status as Habitual Offender, Fourth Offense. He filed this petition for habeas corpus relief raising three issues:

        1. Petitioner was denied his right to a fair trial and the right to confront his accuser.

        2. Petitioner's conviction was obtained by the unconstitutional failure of the prosecution to disclose to the petitioner evidence favorable to him.

        3. The court improperly allowed into evidence testimonial statements made outside the court by complainant Michelle Gunn to police officers without opportunity for cross-examination by petitioner.

The issues have been exhausted.

*Standard of Review*

A petition for a writ of habeas corpus is the exclusive federal remedy available to a state prisoner who challenges the constitutionality of his confinement and seeks a speedier or immediate release. 28 U.S.C. § 2254; Preiser v. Rodriguez, 411 U.S. 475, 500 (1973). Because the petition before the court was filed after the effective date of the Antiterrorism and Effective Death Penalty Act (AEDPA), the court reviews the petition under the standard set forth in 28 U.S.C. § 2254(d), which provides as follows:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The court reviews issues of law or mixed questions of law and fact under § 2254(d)(1). After the enactment of the AEDPA, courts struggled to fashion an appropriate standard of review under § 2254(d)(1), and there was considerable disagreement amongst the circuits as to the level of deference federal courts were required to give state court decisions regarding issues of federal law. In Williams v. Taylor, __ U.S. __, 120 S.Ct. 1495, 1523 (2000), the Supreme Court sought to clarify the standard of review under § 2254(d)(1):

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

The Court further discussed the "unreasonable application" clause, noting that "a federal habeas court may not issue the writ simply because that concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 1522. The reasonableness of the application is judged by an objective rather than a subjective standard. Id. at 1521-22.

With regard to questions of fact, which are reviewed under § 2254(d)(2), the state court's findings of fact are "presumed to be correct." 2254(e)(1). The habeas petitioner bears the burden of "rebutting the presumption of correctness by clear and convincing evidence." Id.

*Background*

The facts are taken from testimony in the trial transcripts and the Michigan Court of Appeals' factual findings in People v. Whittaker, Michigan Ct of Appeals unpublished, *per curiam* opinion, Docket 254012 (5/12/05). The case arose from a disagreement between petitioner and his girlfriend Michelle Gunn. Petitioner and Ms. Gunn had two or three children together and lived in the City of Pontiac. Petitioner baby sat the kids while Ms. Gunn went to work. (TT Vol. I 163-5; TT Vol. II 11-13) On the day before the incident, Ms. Gunn had told

petitioner to get out and that she did not need him to live there anymore. The next day, petitioner returned to Ms. Gunn's home to find Arthur Wells, Ms. Gunn's ex-boyfriend and father of one of her children present in the home. Mr. Wells and Ms. Gunn were going out with 2-year old Brianna, whose father is petitioner. Michelle Gunn had a 7-year old son with Mr. Wells (TT Vol. I, 168), and three other children, ages 4, 2, and 8 months old at the time of the incident. Ms. Gunn's mother had taken all the children but 2-year old Brianna out of state for the week. (TT Vol. II 12-14) Only the two year old was at home at the time. (PE Tr. 7, TT Vol. I 165, II 170) Petitioner passed Mr. Wells standing in the doorway and they shook hands. (TT Vol. I, 169) Petitioner entered the house, and went into the kitchen. He began arguing with Ms. Gunn about her taking Brianna out with Mr. Wells. (TT Vol. I 173) Mr. Wells heard but did not see the argument; Ms. Gunn and petitioner were screaming at each other. Petitioner returned to the doorway with a steak knife and swung the knife twice at Mr. Wells who escaped through the door and ran to a neighbor's house to call the police. (TT Vol. I 177-179) Petitioner chased Mr. Wells for a while but then returned to the house. After abandoning his chase of Mr. Wells, petitioner went back through the house, ran across the back yard, hopped the fence, and repeatedly hit Ms. Gunn on the left side of her face. Mr. Wells testified that he could hear Ms. Gunn screaming from across the street. (TT Vol. I 179) Petitioner dropped the knife sometime during the assault but picked it up again before fleeing at the sight of the neighbors emerging from their homes. He drove off in his car, and police arrived moments later. Ms. Gunn's face was badly bruised and she immediately explained the circumstances of the assault to police and Mr. Wells. Mr. Wells testified that he saw her lying on the ground with a puncture wound in her

ankle and a bruise on her face. (TT Vol. I 180) According to statements Ms. Gunn made to Mr. Wells as the police arrived, and introduced by the prosecution at trial as an "excited utterance" and an exception to the hearsay rule, Ms. Gunn tried to call the police immediately but could not dial and hold her child at the same time. She then ran with her child out the back door, but she caught her foot on a fence trying to climb over it. (TT Vol. I 183) She was crying and very upset. (TT Vol. I 180) He said that petitioner punched her. (TT Vol. I 182) Mr. Wells took her to the doctor for treatment for her leg. (TT Vol. I 183)

In this case, Ms. Gunn appeared on the first day of trial, but trial started about an hour and a half late as the prosecutor was in another court. By the time the case started, she had left the building. (#11-4, TT Vol. 1, 7) The prosecutor so advised the court and noted that Ms. Gunn failed to stay, despite her being subpoenaed. The prosecution requested that the court issue a material witness warrant for her. (TT Vol. II 21) Ms. Gunn had been identified as a *res gestae* witness but not listed as a witness by the prosecution on the Information. She testified at the Preliminary Examination at which time she was cross examined by petitioner's counsel. (#11-3, PE Tr. 4-25) At the Preliminary Examination, she explained the circumstances of the incident, how she had told petitioner that he was no longer welcome in her home, and that she had begun to see Mr. Wells.

On the second day of trial, Ms. Gunn appeared, apparently voluntarily, and the court canceled the warrant. The prosecutor advised the court that she had spoken to Ms. Gunn, that Ms. Gunn was waiting in the hallway, and the prosecutor requested that the material witness warrant be rescinded. (TT Vol. II 21) Ultimately, Ms. Gunn did not testify. The prosecution

called other witnesses to place her conduct, appearance, and statements at the scene into evidence. Petitioner did not call her as a witness.

Petitioner was convicted of Count I, felonious assault against Mr. Wells and Count III, domestic violence. He was not convicted of Count II, felonious assault against Ms. Gunn.

*Analysis*

Petitioner's claims of error #1 and #3 relate to the failure to call Michelle Gunn and the admission of her out of court statements through third parties. Petitioner raises both a Constitutional claim and an evidentiary error.

**Issue 1:**  *Petitioner was denied his right to a fair trial and the right to confront his accuser by prosecution's failure to call Michelle Gunn*

**Issue 3:**  *The court improperly allowed into evidence testimonial statements made outside the court by complainant Michelle Gunn to police officers without opportunity for cross-examination by petitioner.*

In Issue One, petitioner alleges a violation of his Constitutional rights to confrontation and a fair trial. The respondent does not analyze the constitutional claims. Instead, the respondent argues that petitioner did not make a contemporaneous objection and characterizes Issue One as an attack on Michigan's *res gestae* rule. This court disagrees with that characterization. It is clear that petitioner is arguing in Issue One a violation of his federal constitutional rights. In Issue Three, petitioner claims that the statements were improperly admitted under the Rules of Evidence. Respondent in the portion of its brief discussing Issue Three (#8 15-17) does discuss the federal Constitutional claims, and contends that the statements admitted by the court at petitioner's trial were non-testimonial hearsay statements, not subject to

- 6 -

the parameters of *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), and therefore, not subject to Confrontation Clause analysis, citing *Davis v. Washington*, 126 S.Ct. 2266 (2006). Both these issues will be considered together. As discussed below, neither claim is sufficient to grant habeas relief. The statements of Ms. Gunn were properly admitted as exceptions to the hearsay rule as excited utterances and are non-testimonial. Thus, their admission does not violate petitioner's federal constitutional rights.

*Violations of State Evidentiary Rules*

To the extent that petitioner raises claims based on violations of state evidentiary rules such as the *res gestae* requirement, he fails to raise a federally cognizable claim. Trial court errors in state procedure and/or evidentiary law do not rise to the level of federal constitutional claims cognizable in a habeas petition unless the error renders the trial so fundamentally unfair as to deprive the petitioner of federal constitutional rights. Matlock v. Rose, 731 F.2d 1236, 1242 (6th Cir. 1984), cert. denied, 470 U.S. 1050 (1985). Habeas relief for constitutional trial errors will only be granted when the error had substantial and injurious effect or influence in determining the jury's verdict. Brecht v. Abrahamson, 113 S.Ct. 1710 (1993). A violation that is not of constitutional magnitude is generally not cognizable in federal habeas proceedings, regardless of whether it is a breach of federal or state law. Pulley v. Harris, 465 U.S. 37, 41-42 (1984); Clemmons v. Sowders, 34 F.3d 352, 357 (6th Cir. 1994). Errors of the application of state law are not to be questioned in federal courts. Waters v. Kassulke, 916 F.2d 329, 335 (6th Cir. 1990). However, habeas relief may be granted for errors not of constitutional magnitude, but instead based upon errors of federal law, when there is a "fundamental defect which

inherently results in a complete miscarriage of justice" standard.  Reed v. Farley, 512 U.S. 339, 348, 114 S.Ct. 2291, 2297 (1994).

*Confrontation Clause*

The analysis of confrontation clause challenges begins with the Sixth Amendment of the United States Constitution which guarantees criminal defendants the right to physically confront and cross-examine adverse witnesses at trial.  *Illinois v. Allen*, 397 U.S. 337, 338 (1970).  This clause in the federal Constitution protects the right of confrontation as a trial right.  *Gernstein v. Pugh*, 420 U.S. 103, 119-120 (1975).  The clause provides a criminal defendant the right to directly encounter adverse witnesses, the right to cross-examine adverse witnesses, and the right to be present at any stage of the trial that would enable the defendant to effectively cross examine adverse witnesses.  See, *U.S. v. Kirby*, 418 F.3d 621, 627-28 (6th Cir. 2005).  The right of confrontation extends to state prosecutions through the due process clause of the Fourteenth Amendment.  See, *Pointer v. Texas*, 380 U.S. 400, 403 (1965).  However, a defendant cannot invoke the Sixth Amendment Clause to confront non-adverse witnesses.  See, *U.S. v. Kindig*, 854 F.2d 703, 709 (5th Cir. 1988).

In addition, the Confrontation Clause does not require the prosecution to call all the witnesses it has against the defendant.  See, *U.S. v Porter*, 764 F.2d 1, 9-10 (1st Cir. 1985); *U.S. v. Moore*, 954 F.2d 379, 381 (6th Cir. 1992).  Although the right to face-to-face confrontation is a core value protected by the Clause, it is not an absolute right.  *Maryland v. Craig*, 497 U.S. 836, 845 (1990).  Limitation on the right to confront adverse witnesses is determined on a case-by-case basis.  *Id*. at 857-858.  Violations of the Confrontation Clause are also subject to

harmless error analysis. *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986); *Coy v. Iowa*, 487 U.S. 1012, 1022 (1988).

The Supreme Court recently altered the analysis of challenges brought under this clause.[1]  Previously, a defendant could challenge the admissibility of all out-of-court statements under the Confrontation Clause of the Sixth Amendment.  A trial court correctly then, quite wrongly now, would analyze such challenges on the ground that the applicability of a traditional hearsay exception to each statement (in our case, the excited-utterance exception) freed the evidence from challenge under the Confrontation Clause in accordance with *Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980).  In light of the Supreme Court's decision in *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), that is no longer an accurate mode of analysis.  *See id.* at 61, 124 S.Ct. 1354.  Under *Crawford,* when the prosecution seeks to introduce "testimonial" statements against a criminal defendant, when (in the words of the Sixth Amendment) the "accused" is being subjected to "witnesses against him," U.S. Const. Amend. VI, the defendant generally has a right to confront those witnesses-without regard to what the modern-day Federal (or State) Rules of Evidence have to say about the matter. *Crawford* thus established that the Confrontation Clause, bars the "admission of *testimonial statements* of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had a prior opportunity for cross-examination."  541 U.S. at 53-54, 124 S.Ct. 1354 (emphasis added).  In announcing this rule, *Crawford* chose not to provide a "comprehensive"

---

[1] The analysis of *Crawford v. Washington*, 541 U.S. 36, 54 (2004) is applicable here because petitioner's case was on direct review pending at the time the opinion was issued.

definition of "testimonial" hearsay, *id.* at 68, 124 S.Ct. 1354, but it did offer initial guidance on the meaning of the term. The Court explained that "testimony" involves " '[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact.'" *Id.* at 51, 124 S.Ct. 1354 (quoting 2 N. Webster, *An American Dictionary of the English Language* (1828)). And it explained that testimonial hearsay at a minimum includes "a formal statement to government officers" by "[a]n accuser" in the form of an affidavit, a deposition, prior testimony or the like. *Id.* at 51-52, 124 S.Ct. 1354. Testimonial evidence included at a minimum that which is given at preliminary examination, at a grand jury, former trial, and police interrogations. It does not include a casual remark to an acquaintance, business records, or statements made in furtherance of a conspiracy.

While these initial explanations sufficed to resolve *Crawford,* which involved statements made during a station-house interrogation, the Court subsequently reviewed two consolidated cases that required it to give further definition to the line between testimonial and non-testimonial hearsay. *See Davis v. Washington,* 547 U.S. 813, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006). The Court held that statements are non-testimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution. *Id*. at 2273-74.

*Davis* applied this definition of non-testimonial statements to two recurring types of witness statements: statements to 911 operators and statements to the police at the scene of the crime. With respect to hearsay testimony, courts have found a confrontation clause violation when testimony is erroneously admitted over a hearsay objection, but such violation has been held to be harmless when other evidence against the defendant is overwhelming. *U.S. v. King*, 36 F.3d 728, 732-34 (8th Cir. 1994). The admission of out-of-court statements does not violate the Confrontation Clause when the declarant testifies as a witness at trial and is subject to full and effective cross-examination concerning the prior statements. *California v. Green*, 399 U.S. 149, 158 (1970). In *Crawford v. Washington*, 541 U.S. 36, 68 (2004), the Supreme Court distinguished between testimonial and non-testimonial evidence. The court held that a statement is testimonial when in the totality of circumstances police interrogation is not in response to an ongoing emergency but rather to investigate past events potentially relevant to criminal proceedings. *Davis v. Washington*, 126 S.Ct. 2266 (2006). Admission of a testimonial statement violates the Confrontation Clause unless the declarant is unavailable and the defendant had a prior opportunity to cross examine the declarant. Further, if the hearsay is non-testimonial, the Confrontation Clause does not apply and admissibility is governed by the applicable jurisdiction's rules of evidence. *Davis*, 126 S Ct 2266, 2273-74.

While some courts hold that Davis appears to vitiate Robert applicability to non-testimonial statements, our circuit and some others continue to analyze Confrontation Clause challenges to non-testimonial statements under the rule of *Ohio v. Roberts*, 448 U.S. 56 (1980),

overruled on other grounds by *Crawford*, 541 U.S. at 60. *U.S. v. Mooneyham*, 473 F.3d 280, 286 (6th Cir. 2007).

Our circuit has further defined non-testimonial statements following *Crawford* and *Davis* in *United States v. Arnold*, 486 F.3d 177, 184 (6th Cir. 2007).

> Under Rule 803(2) of the Federal Rules of Evidence, a court may admit out-of-court statements for the truth of the matter asserted when they "relat[e] to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." To satisfy the exception, a party must show three things. "First, there must be an event startling enough to cause nervous excitement. Second, the statement must be made before there is time to contrive or misrepresent. And, third, the statement must be made while the person is under the stress of the excitement caused by the event." *Haggins v. Warden, Fort Pillow State Farm,* 715 F.2d 1050, 1057 (6th Cir. 1983). All three inquiries bear on "the ultimate question:" "[W]hether the statement was the result of reflective thought or whether it was a spontaneous reaction to the exciting event." *Id.* at 1058 (internal quotation marks omitted). We apply abuse-of-discretion review to a district court's application of the rule. *See United States v. Beverly,* 369 F.3d 516, 540 (6th Cir.2004).

486 F.3d 177, 184 (6th Cir. 2007).

The Circuit Court rejected defendant's argument and found that its cases do not demand a precise showing of the lapse of time between the startling event and the out-of-court statement. The exception may be based solely on "[t]estimony that the declarant still appeared nervous or distraught and that there was a reasonable basis for continuing [to be] emotional[ly] upset," *Haggins,* 715 F.2d at 1058 (internal quotation marks omitted); *see United States v. Schreane,* 331 F.3d 548, 564 (6th Cir. 2003). Thus there is no unyielding requirement of a time line

showing precisely when the threatening event occurred or precisely how much time there was for contrivance.  *Id*. at 185.

After considering the circumstances, Gunn's statement to officers upon their arrival at the scene and the statements heard by Mr. Wells were non-testimonial and subject to the excited utterance exception to the hearsay rule.  When the officers arrived at the scene soon after learning of the 911 call, Gunn was crying, hysterical, visibly shaken and upset following the startling event of petitioner's wielding of the knife and chasing her and Mr. Wells.  Thus, the court had authority to admit this statement.  See, *U.S. v. Arnold,* 486 F.3d at 186.  Gunn was not acting as a *witness;* she was not *testifying*.  The exchange suggests that the officers primarily were focused on meeting the emergency at hand, not on preparing a case for trial. The distress described in her voice, the present tense of the emergency, the targeted questioning of the officers as to the nature of the threat, all of which suggested that the engagement had not reached the stage of a retrospective inquiry into an emergency gone by.  No reasonable officer could arrive at a scene while the victim was still "screaming" and "crying" about a recent threat to her life by an individual who had a knife and who was likely still in the vicinity without perceiving that an emergency still existed. *U.S. v. Arnold,* 486 F.3d 177, 190 -191 (6th Cir. 2007).  Nor does the fact that Gunn made her statement to investigating police officers on the scene by itself establish that it was testimonial.  *Davis* disclaimed creating any such rule.  126 S.Ct. at 2279.  Officers investigating domestic disputes, it observed, "need to know whom they are dealing with in order to assess the situation, the threat to their own safety, and possible danger to the potential

victim . . .. Such exigencies may often mean that initial inquiries produce non-testimonial statements." *Id.* (internal quotation marks, brackets and emphasis omitted).

*Arnold* opined that there remained a follow-up question: While the Confrontation Clause plainly restricts the admission of testimonial statements, does it continue to place any restrictions on the admission of non-testimonial statements? Noting that *Crawford* left the question open, 541 U.S. at 61, 124 S.Ct. 1354, and in the absence of direction from the Court, the Sixth Circuit continued to apply the *Roberts* test to these types of statements since *Crawford. See, e.g., United States v. Johnson,* 440 F.3d 832, 843-44 (6th Cir. 2006); *United States v. Franklin,* 415 F.3d 537, 546 (6th Cir. 2005); *United States v. Gibson,* 409 F.3d 325, 338 (6th Cir. 2005). The court found that *Davis* had answered the question. The Confrontation Clause, *Davis* explains, is "solely concerned with testimonial hearsay," 126 S.Ct. at 2274 (internal quotation marks omitted), meaning that the only admissibility question in this setting is whether the statement satisfies the Federal (or State) Rules of Evidence. *See id.* (noting that the Confrontation Clause's "focus on testimonial hearsay" "must fairly be said to mark out not merely its 'core,' but its perimeter") (internal quotation marks and brackets omitted); *see also Whorton v. Bockting,* 549 U.S. 406, 127 S.Ct. 1173, 1183, 167 L.Ed.2d 1 (2007) (Confrontation Clause has no application to out-of-court non-testimonial statements). Because the court concluded that the statements were non-testimonial and because *Arnold* had not shown that the admission of the statements violated the Federal Rules of Evidence, the district court properly permitted the jury to consider them. *U.S. v. Arnold*, 486 F.3d 177, 192 -193 (6th Cir. 2007). Likewise, here, Ms. Gunn's statements were properly determined to be excited utterances and admissible under the Rules of Evidence. The

hearsay statements were not testimonial and therefore not subject to Confrontation Clause analysis. Therefore, there are no grounds for habeas relief.

**Issue Two:** *Petitioner's conviction was obtained by the unconstitutional failure of the prosecution to disclose to the petitioner evidence favorable to him.*

Petitioner argues that a mistrial should have been granted because the prosecutor turned over to his counsel a written statement made by him to police and a narrative of the same interview on the second day of trial. Petitioner moved for mistrial. In response, the prosecutor stated that she did not have such statements earlier and turned them over to opposing counsel as soon as she obtained copies from the local police file. The prosecutor agreed to forego introduction of the statements in her case-in-chief and to use them only for impeachment. The trial court offered petitioner as much as a week to review them, but counsel requested only an hour. After review, trial continued as scheduled. The state Court of Appeals upheld the trial court's denial of the motion for mistrial. (Unpublished *per curiam* Appellate Opinion, 5/12/05, #254012). Respondent argues that the Court of Appeals' decision was not an unreasonable application of established United States Supreme Court precedent. This court agrees.

Generally, defendants have no Constitutional rights to discovery in criminal proceedings. *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977). Nevertheless, courts have fashioned rules providing for the disclosure of certain types of evidence when required to safeguard a defendant's due process rights. In *Brady v. Maryland*, 373 U.S. 83, 87 (1963), the Court held that due process requires the prosecution to disclose evidence favorable to an accused upon request when such evidence is material to guilt or punishment. In *United States v. Bagley*, 473

U.S. 667, 682 (1985), the Court held that evidence is material if there is a reasonable probability that disclosure of the evidence would have changed the outcome of the proceeding.  A reasonable probability means one sufficient to undermine confidence in the outcome.  *Id*.  The prosecutor's duty of disclosure under *Brady* includes evidence which is exculpatory and that which could be used to impeach government witnesses.  *Giglio v. U.S.* 405 U.S. 150 (1972).  Tardy disclosure of *Brady* material does not constitute a *Brady* violation and will not result in sanctions unless the defendant can show that the delay denied him a fair trial.  See, e.g. *United States v. Blood*, 435 F.3d 612, 627 (6th Cir. 2006); *U.S. v. Perez*, 353 F.3d 1, 8-9 (1st Cir. 2003).  In *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999), the Court held that there are three components of a *Brady* violation: (1) the evidence at issue must be favorable to the accused; (2) the evidence must have been suppressed by the state, either willfully or inadvertently; and (3) prejudice must have ensued.

In this case, petitioner contends that the late disclosure of these statements–one inculpatory and one exculpatory–prejudiced him because it precluded his defense counsel from adequate pre-trial preparation.  Only one of the statements appears to meet the definition of *Brady*–his hand written statement to the police where he claimed that he brandished the knife in self defense and crossed the back yard only to speak with his girlfriend in a vain attempt to calm her down.  The statement he wrote did not admit that he struck her. (Court of Appeals Opinion, quoted in #8, p. 11)  The statements were provided, not suppressed, albeit belatedly.  However, petitioner's counsel was provided the statements during trial, was given the full time he

requested to review them, and the prosecutor offered to use them only as impeachment if petitioner testified.  There is no showing of prejudice and the issue fails to merit habeas relief.

*Conclusion*

Accordingly, it is recommended that the petition for habeas corpus be denied.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v. Walters, 638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court.  The response shall address each issue contained within the objections specifically and in the same order raised.

                S/Virginia M. Morgan
                Virginia M. Morgan
                United States Magistrate Judge

Dated: April 24, 2009

**PROOF OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System and/or U. S. Mail on April 24, 2009.

                                                s/Jane Johnson
                                                Case Manager to
                                                Magistrate Judge Virginia M. Morgan